Brockenbrough, J.
dissented from so much of the above opinion as relates to the competency of the juror, Irvine, and gave his reasons, in conference, to the following effect:
“ I am of opinion, 1. That, it does not appear from the record that Mr. Irvine had formed and expressed an opinion of the prisoner’s guilt in relation to the embezzlement of the check of Abbatt & Co. that being the subject of the prosecution, and that he had not at the time of the trial an existing decided opinion on that subject: I think so, because Irvine expressly said, ‘that his opinion was a general one that the prisoner had got the money out of she bank by the use of checks, in the manner which had been alledged, without applying definitely to any particular check, or sum of money.’ See the record. Now, if he had only formed a general opinion as to the prisoner’s guilt, how could he be said to have formed an opinion as to that specific check; or, to have an existing opinion as to it at the trial; or, to go into the trial under its influence ?
2. I think it is very clear from the record, that Mr. Irvine had not formed even his general opinion from the evidence which he had heard in Court. If he had formed his opinion from that source, how easy would it have been for him to have said so ? One word to that effect would have curtailed the Bill of Exceptions, and put a stop to much discussion. But he was only casually in Court, and heard only part of the evidence during that time. What kind of a decided opinion can that be, winch is formed, *313 even in part, from a casual presence in Court, during a trial of several days, when the evidence is altogether circumstantial, various, minute, and sometimes, perhaps, contradictory ? But it is still more clear that he could not have formed a decided opinion from that source as to the prisoner’s guilt in relation to Abbatt's check, because he not only says he does not recollect to have heard the evidence as to it, but in another part he says, ‘but that as above stated, he had not heard the evidence particularly in relation to this check.’ Here he speaks not doubtfully, but positively. My inference is, that he formed his opinion not from evidence, but from rumor, and the conversations of which he speaks.
3. The question then with me, is, whether an opinion merely suppositious, (as it is called by Treby, C. J.) is such an one as ought to exclude a man from being a juror. If it is, then how difficult must it be to obtain an impartial jury in any of our counties, where the offence is atrocious, and susceptible of the clearest proof, or alledged to have been committed by a conspicuous character ! Every man hears of it, forms an opinion from the rumor, and our countrymen are certain to speak their opinions. Must such persons be necessarily partial, and incompetent ? I admit, that if such an opinion be so firmly rivetted on the mind, that it will not readily yield to the force of evidence, even although the juror is under the solemn sanction of an oath, to give his verdict according to the evidence, then such an opinion ought to operate as an exclusion. But I do not think that such obstinacy can be ascribed to the venire-man in this case, even as it is put down on paper. ' He believed that he would be guided by the evidence, if he were on the jury, but that he should be unwilling to trust himself.’ This latter remark is the only one which to me appears to render it in the least doubtful, whether he was a good juror ; yet it is such an one as almost any man of delicacy, and uprightness, would have made of himself in such a situation. The remark, if accompanied by an open and ingenuous manner, would seem to indicate that the venire-man would cautiously keep watch on his own feelings and prepossessions, and is entirely compatible with a high sense of justice, and a scrupulous impartiality. For these reasons, I am still of opinion, that Mr. Irvine was an impartial juror, but I readily acquiesce in the decision of the Court.”